Roy POWELL, et al., Appellants/Cross–Respondents,

v.

Robert A. BAGLEY, et al., Respondents/Cross–Appellants.

No. 62373.

Missouri Court of Appeals, Eastern District, Division Five.

Sept. 14, 1993.

---

Ellsworth Cundiff, Jr., Leslie Ann Broome, St. Charles, for appellants.

Brian E. McGovern, Chesterfield, for respondents.

GARY M. GAERTNER, Chief Judge.

Appellants, Roy and Genevieve Powell, appeal from a judgment entered for respondents, Robert A. Bagley, Cheryl Bagley, Cynthia Bagley Durham, and Sandra Bagley, for breach of contract in the Circuit Court of St. Louis County. We reverse.

On March 10, 1981, appellant Roy Powell entered into a written contract for deed with respondents, whereby Powell would sell respondents four lots in the Kimo Subdivision in Times Beach, Missouri. The contract provided that Powell would sell appellants lots 4, 5, 6 and 7 for a total price of $6,500. Appellants were to pay $1,550 in earnest money and were to make monthly payments of $100 on the balance of the purchase price. This

included an annual interest rate of 12%. Payments would continue until the balance was paid. Respondents were to take possession of lots 6 and 7 immediately, and lots 4 and 5 when $2000 had been paid. The contract specified title to the property would be conveyed by warranty deed and the sale would be closed upon the date of the final payment. This instrument also specified that, in the event respondents defaulted in their payments for more than 45 days, all payments made up to that time, as well as any rights to the property, would be forfeited.

At the time of the contract, the Powell Land Company held title to the four lots. The Powell Land Company was a corporation wholly-owned by the Powell family. In 1984, after respondents had stopped making payments, the Powell Land Company deeded the four lots to appellants, Roy and Genevieve Powell, the current owners.

Respondents took physical possession of the lots on March 10, 1981, and began to clear debris and fill holes and crevices in preparation to build a home. As specified in the contract, respondents began making monthly payments of $100 in April of 1981, but discontinued payments as of June 1983, claiming that Roy Powell had breached the contract. Respondents had paid Powell monies totalling approximately $4,500 at the time respondents discontinued payments.

Appellants filed a two-count suit against respondents on May 1, 1989. Count I was for breach of contract, and Count II was for trespass and ejectment. Respondents filed a two-count counterclaim. Count I was for fraud and Count II was for breach of contract. The case was tried to the court.

The trial court issued its decree and order on June 1, 1992, without specific findings. Regarding appellants' claims, the court found against them on their breach of contract claim, and for them on the trespass and ejectment claim. The court found against respondents on their fraud claim, and for them on their breach of contract claim. The

court awarded respondents $4,500 in damages.[1]

As we understand it, the only points raised on appeal concern respondents' counterclaim for breach of contract. Appellants claim the trial court erred in finding for respondents and against appellants on this claim. Respondents cross-appeal, claiming they should have received prejudgment interest in addition to their award. We first address appellants' claims.

Appellants assert there was insufficient evidence as a matter of law upon which to find appellants breached the contract. We agree.

 We start by noting the trial court's decision will be sustained on review unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Murphy v. Carron,* 536 S.W.2d 30, 32 (Mo. banc 1976). Because there are no findings of fact, all factual issues should be presumed to be in accordance with the trial court's holding. Rule 73.01(a)(2); *S.M.B. by W.K.B. v. A.T.W.,* 810 S.W.2d 601, 606 (Mo.App., E.D.1991).

We find that even resolving all factual issues in favor of respondents, there is no evidence to support a finding that appellants breached the contract. An examination of the record reveals two possible justifications for the trial court's holding. Both are contentions that appellant somehow repudiated the contract, or committed anticipatory breach by refusing to perform or by rendering performance impossible. We will examine these arguments to see if either of them support the holding of the trial court.

The point raised most vociferously by respondents at trial was that appellants repudiated the contract by refusing to release title to some of the lots prior to the final payment. Respondents understood that Roy Powell would release the title to lot 7 immediately upon payment of $1,550. Respondents further claim that the $1,550 earnest money was really meant to be payment for lot 7. In addition, they contend Powell promised to release title to either lot 6 or all of the lots

when respondents had paid $2,000.[2] When Powell failed to release title to any of the lots, respondents contend he committed anticipatory breach.

 We note that anticipatory breach by repudiation occurs when a contracting party manifests a positive intention not to perform, either by express statements or by conduct. *Hart and Son Hauling, Inc. v. MacHaffie,* 706 S.W.2d 586, 588 (Mo.App., E.D.1986). However, even accepting that Powell made statements vowing to release title to certain lots, we cannot find that his failure to do so amounted to a repudiation of the contract. If a written contract appears complete on its face, it will be presumed to be a final complete agreement between the parties and will prevent the admission of parol evidence. *Jake C. Byers, Inc. v. J.B.C. Investments,* 834 S.W.2d 806, 812 (Mo.App., E.D.1992). The contract at issue clearly stated title to the property was to be conveyed by warranty deed and that the "sale shall be closed on date final payment is made." The contract clearly did not require the seller to transfer title until after final payment was made. We find no indication in the written instrument that the $1,550 designated as earnest money was intended as payment which would require appellants to release the title to lot 7.

Finally, the contract specified that respondents would *take possession* of lots 6 and 7 immediately, and lots 4 and 5 upon payment of $2,000. There is nothing in the written instrument which required appellants to transfer title upon the payment of $1,550 or $2,000. Respondents themselves are not in agreement as to what Powell supposedly promised. Because the written contract appears clear and unambiguous on its face, the trial court could not consider parol evidence to further explain its terms.

Additionally, we note that if the trial court had found that Powell fraudulently misled respondents, Powell's statements could have been considered to construe the terms of the contract. *See Warrenton Campus Shopping Ctr. v. Adolphus,* 787 S.W.2d 852, 855 (Mo.

---

1. Other facts will be developed as necessary.

2. The testimony of Cynthia Bagley Durham and Robert Bagley conflicted on this point.

App., E.D.1990). However, the trial court found for appellants on respondents' claim for fraudulent misrepresentation and this holding is not contested on appeal. Therefore, we will not consider parol evidence on appeal.

The second theory advanced by respondents is that appellants could not perform because Roy Powell did not own clear title to the four lots. Respondents point out that the lots were owned by Powell Land Company at the time of contract, but that Powell signed the contract as the sole seller. Because Powell did not own the property, respondents contend, it was impossible for him to transfer title. We disagree.

 The general rule is that a vendee cannot complain that the vendor's title is defective prior to the closing date. *Hellrung v. Hoechst*, 384 S.W.2d 561, 564 (Mo.1964); *George v. Lemay Bank & Trust Co.*, 618 S.W.2d 671, 675 (Mo.App., E.D.1980). In addition, this court has held that absent fraud, misrepresentation, or impossibility of correction of title, a buyer cannot rescind a real estate contract merely because he has discovered that title to some of the property was in the name of a corporation wholly owned by one of the sellers. *Perkinson v. Burford*, 623 S.W.2d 30, 33 (Mo.App., E.D. 1981). We do not find that appellants had a right to rescind the contract merely because title to the property was in the Powell Land Company. It logically follows that Powell did not repudiate the real estate contract merely because the four lots were titled in such a way. There was no evidence provided by respondents to show that Powell would have been unable to obtain title to the properties before the date of closing.

Respondents point out that Powell Land Company is owned by Powell and his wife. They contend that Powell could not bind his wife to the contract. However, as shareholders, the Powells themselves do not have legal ownership of corporate property; rather, the corporation retains title. *See Levesque v. Levesque*, 773 S.W.2d 220, 222 (Mo.App., E.D.1989). Therefore Powell was not attempting to bind himself and his wife by sole contract, but was binding the corporation, the Powell Land Company. Respondents have not alleged, and nothing in the record indicates, that Powell lacked the legal authority to sell the lots on behalf of Powell Land Company.

We find nothing in the record to indicate that appellants' failure to transfer title amounted to anticipatory breach or repudiation. Based on the forgoing, the decision of the circuit court pertaining to respondents' breach of contract claim is reversed.

Because we find appellants are not liable for breach of contract, we need not consider appellants' point on appeal alleging the trial court erred in entering a judgment against Powell's wife. Our holding also renders respondents' cross-appeal, concerning prejudgment interest, moot.

PUDLOWSKI and REINHARD, JJ., concur.