SUPERIOR OUTDOOR ADVERTISING
COMPANY, d/b/a Buena Vista Sign
Co., Plaintiff–Respondent,

v.

Gary W. SNADON, d/b/a Shepherd of the
Hills Historical Society, Ltd.,
Defendant–Appellant.

No. 21179.

Missouri Court of Appeals,
Southern District,
Division One.

March 20, 1998.

Gary A. Love, Ozark, for Defendant–Appellant.

Michael J. Patton, Eric M. Belk, Turner, Reid, Duncan, Loomer & Patton, P.C., Springfield, for Plaintiff–Respondent.

Before GARRISON, P.J., and PREWITT and CROW, JJ.

PER CURIAM.

The trial court awarded Superior Outdoor Advertising Company, d/b/a Buena Vista Sign Co. ("Plaintiff"), a $45,601.03 judgment against Shepherd Of The Hills Historical Society, Ltd. ("Defendant") based on a contract to furnish outdoor advertising signs. On this appeal, Defendant claims that the trial court erred because Plaintiff did not furnish quiet enjoyment of a material part of the signs, and had repudiated the contract. Alternatively, it contends that the trial court erred in computing damages by not considering evidence relating to mitigation of damages. We affirm.

 In a court tried case, the scope of our review is set by Rule 73.01[1] as interpreted in *Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976). This court will sustain the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Id.* at 32. Under this standard, we give considerable deference to a judgment turning on evidentiary and factual evaluations by the trial court. *In re Marriage of Fry*, 827 S.W.2d 772, 775–76 (Mo.App. S.D.1992). We accept all evidence and inferences favorable to the judgment and disregard all contrary inferences. *Kueffer v. Brown*, 879 S.W.2d 658, 660 (Mo.App.E.D. 1994). Where, as here, findings of fact and conclusions of law are neither requested nor entered, all factual issues are considered as having been found in accordance with the result reached. *McLain v. Johnson*, 885 S.W.2d 345, 347 (Mo.App. W.D.1994).

Defendant entered into a contract with Buena Vista Sign Co. on May 1, 1994, by which the latter agreed to furnish four outdoor advertising signs, designated as Signs 536, 628, 724, and 773. The contract called for Defendant to pay $52,200 over a period of 36 months at the rate of $1450 per month. It also contained the following language:

> It is further agreed that if any of said monthly payments are not paid when due and remain delinquent for thirty days, the entire contract price shall become due and payable at once. If payments remain delinquent for sixty (60) days, [Buena Vista] shall be under no further obligation to maintain signs and [Buena Vista] may at any time while such delinquency continues remove said signs. Such removal shall in no manner reduce the total amount due under this agreement.

Buena Vista subsequently sold its business to Superior Outdoor Advertising Company, which assumed the contract with Defendant.

Defendant made periodic payments under the contract until October 18, 1994, when it made a payment which brought it current through November 1, 1994. The only other money paid by Defendant under the contract was a $2900 payment made on April 5, 1995, which was applied to the payments due on November 1 and December 1, 1994, bringing

---

1. All rule references are to Missouri Rules of Civil Procedure (1996), and all references to statutes are to RSMo 1994, unless otherwise indicated.

the account current through January 1, 1995. Plaintiff filed this suit on July 20, 1995.

 In its first point, Defendant contends that the trial court erred in awarding any damages to Plaintiff because the "undisputed testimony" showed that Plaintiff "could not tender to [Defendant] quiet enjoyment of a material portion of the advertising" leased. Initially, we note that this point does not satisfy the "wherein and why" requirement of Rule 84.04(d). To satisfy that Rule, a point must state why the ruling was erroneous and wherein the evidence, the lack of it, or other matters supports the position the party asserts the trial court should have taken. *Carrier v. City of Springfield,* 852 S.W.2d 196, 198 (Mo.App. S.D.1993). Inasmuch as we can discern the essence of Defendant's contention from the argument section of its brief, and whereas Plaintiff has responded to the brief with no apparent difficulty, we will discuss this point on its merits.

Defendant's contention that Plaintiff could not tender a substantial portion of the subject of the contract relates to Sign 536. It argues that Plaintiff had a dispute with the landowner where that sign was located and was denied access to the property. Defendant contends, therefore, that the "package" of advertising leased to it was not available, and Plaintiff should fail on its claim for rent because "during a substantial period of time involved in the lease, and up to the date of trial, [Plaintiff] was not in a position to go ahead with the servicing of the signs ..." Defendant, however, provides no citation to the record in support of these statements.

Our review of the record indicates that there was evidence that Plaintiff had a dispute with the landowner where Sign 536 was located, and that it had been denied access to that property. The length of that dispute and the period during which such access had been denied are not clear from the record. In response to questions on cross-examination, an employee of Plaintiff admitted that it

had been going on for "at least six to eight months" prior to the trial on July 3, 1996. We find no other evidence concerning the nature or length of that dispute.

Significantly, Defendant bases its contention solely on the *existence* of this dispute between Plaintiff and the landowner. It does not refer us to any evidence indicating how that dispute may have interfered with or adversely affected its advertising on that sign. In fact, the evidence indicated that the sign structure did contain Defendant's advertising.[2]

Defendant cites § 400.2A–211 for the proposition that a lease of personalty includes a warranty that no person holds a claim or interest in the goods, arising from an act or omission of the lessor, that will interfere with the lessee's enjoyment of the leasehold interest. It also cites *Shop 'N Save Warehouse Foods, Inc. v. Soffer,* 918 S.W.2d 851, 859 (Mo.App. E.D.1996), in which it is stated that the covenant of quiet enjoyment in a real estate lease is breached when the lessor interferes with the lessee's possession or enjoyment of the property. In the instant case, there was no evidence that the dispute with the landowner originated with an act or omission by Plaintiff, or that it resulted in any interference with Defendant's use or enjoyment of Sign 536.

 The evidence demonstrated that no rent had been paid since the April 5, 1995 payment, which was applied to the rental amounts due up to January 1, 1995. The contract provided that Plaintiff had no obligation to maintain the signs if rental payments were delinquent for sixty days. There was no evidence that the dispute with the landowner was even in existence, much less that it interfered with Defendant's use or enjoyment of Sign 536, during the time that Plaintiff had a duty to maintain the signs.[3] "An alleged breach of a covenant on the part of the lessor is not a defense to an action for

---

2. There was evidence that at some point, painters hired by Defendant started to paint the sign but were stopped by Plaintiff's employees. The record does not reveal when this occurred or what Defendant's purpose was in doing so. The record does indicate that the sign contained Defendant's advertising prior to that time.

3. There was evidence that the sign contained areas of paint, placed there by Defendant's agents less than a year before trial. This would have been later than July, 1995.

rent where the acts relied on as a breach occurred subsequent to the termination of the lease by the lessor pursuant to its terms." 52 C.J.S. Landlord & Tenant § 556 (1968). Defendant's first point is without merit and is denied.

In its second point, Defendant contends that the trial court erred in entering the judgment against it because Plaintiff had repudiated the contract by manifesting a positive intention not to perform its terms. It argues that Plaintiff repudiated the contract when it wrote to Gary Snadon, an officer of Defendant, on March 21, 1995 demanding that Defendant's "receivables" be paid in full in order to hold any of Defendant's locations. According to Defendant, the "receivables" demanded by Plaintiff included amounts owing by a separate entity, Shenandoah South, Inc., of which Mr. Snadon was also apparently an officer. The pertinent part of the letter read:

> Per our conversation, The Pioneer Group will require that you [sic] existing receivables be paid in full in order to hold any of the Shepherd of the Hills locations. Also, we are canceling the Shennandoah [sic] contracts immediately and will expect that receivable balance to be satisfied before we can reserve new locations.

Mr. Snadon responded by sending a letter on April 3, 1995 to Plaintiff enclosing a check from Defendant for $2900 "for sign rental for March and April," and saying that it would pay an additional $2900 between June and September "to bring Shepherd of the Hills account current." The letter also offered $4750 as full settlement of the Shenandoah South account.[4]

At trial, Plaintiff's representative gave the following testimony about the letter, in cross-examination:

Q: All right, and isn't it true that the first sentence of the second paragraph is "Per our conversation, the Pioneer Group will require that your existing receivables be paid in full in order to hold any of the Shepherd of the Hills' locations"?

A: That's what it says.

Q: Did you have any basis in fact for taking that position?

. . . .

A: My position as of March 21st of '95, when this was written, was that he owed us back payments.

Q: But, you told him he couldn't keep his Shepherd locations unless he paid for the Shenandoah locations. Isn't that what the letter says . . .

A: No, sir, it doesn't say that.

. . . .

Q: Now, isn't it true that you all continued to take the position that he had to pay all the bills?

A: I believe so.

■■■■ Defendant, citing *Powell v. Bagley*, 862 S.W.2d 412, 414 (Mo.App. E.D.1993), and *Carmel v. Dieckmann*, 617 S.W.2d 459, 460–61 (Mo.App. E.D.1981), correctly points out that anticipatory breach of contract by repudiation occurs when a contracting party manifests a positive intention not to perform, either by express statements or by conduct. Here, however, Defendant had previously breached the contract over four months earlier by its failure to pay. According to the terms of the contract, the entire contract balance was due and payable after a delinquency of thirty days; and, after a sixty day delinquency, Plaintiff no longer had an obligation to maintain the signs.

Plaintiff's letter does not compel the conclusion that it was requiring Defendant to pay both accounts as a condition of continuing to maintain signs for Defendant. In any event, by the terms of the contract, the entire balance was then due and Plaintiff was excused from continuing to maintain the signs. "When a lease contains a provision authorizing the lessor to terminate the tenancy on the failure to pay rent, the lessor is authorized to end the lease on the breach of such a condition." *Wilson v. Watt*, 327 S.W.2d 841, 852 (Mo.1959). Defendant had already breached the contract at the point when it claims that Plaintiff anticipatorily

---

4. There is no contention that the acceptance of the $2900 payment in April, 1995 by Plaintiff is pertinent to the issues raised on this appeal.

breached it by repudiation. This point is denied.

In its final point, Defendant contends that the trial court erred in computing the damages by failing to consider matters relating to mitigation of damages. In particular, it argues that Signs 628 and 724 had been relet, Sign 536 was unavailable for reletting because of Plaintiff's inability to access it, and Sign 773 was not being properly advertised for reletting.

Initially, we note that this point also fails to satisfy the requirements of Rule 84.04(d). At a minimum, it fails to fully comply with the necessity of stating wherein the evidence or other matters support the position Defendant asserts the trial court should have taken. Nevertheless, we will again attempt to glean the essence of Defendant's contention from the argument portion of the brief.

Failure to take reasonable steps to mitigate damages is an affirmative defense which the breaching lessee must prove. *Jacobs v. Georgiou*, 922 S.W.2d 765, 771 (Mo. App. E.D.1996). Here, Defendant argues that Signs 628 and 724 had been relet, but that it was not given credit for the income generated thereby. The contract between the parties was to run from May 1, 1994 through April 30, 1997. On April 1, 1996, Sign 628 was relet for $350 per month, and Sign 724 was relet on December 1, 1995 for $275 per month. Defendant argues that the new lease arrangements on these signs would, during the term of the contract in issue here, produce income totaling $8,600 for which it should receive credit.[5]

Plaintiff presented evidence that the income received from these two signs to the date of trial was $1,050 for Sign 628 and $1100 for Sign 724, for a total of $2,150. The expense of taking Defendant's signs down and installing new ones for the subsequent tenants was $1952 for Sign 628 and $640 for Sign 724, for a total of $2592. Therefore, at the time of trial, Plaintiff had experienced a net loss of $442 as a result of the expense associated with the reletting of the signs.

Defendant cites no authority for the proposition that it is entitled to credit for future payments which have not been, and may never be, received, and does not explain why such authority is not available. Under such circumstances, Defendant has effectively abandoned this portion of its point. *Emery v. Emery*, 833 S.W.2d 453, 454–55 (Mo. App. S.D.1992).

Defendant also argues, in effect, that a rate of income on Sign 536, at the going rate of $300 to $400 per month, should be attributed to Plaintiff from February 1, 1995, when the signs were purchased from Buena Vista by Plaintiff. This contention is premised on the testimony that Defendant did not have access to the sign at the time of trial. Defendant does not show, however, that Plaintiff had any control over this lack of access, nor does it indicate during what period of time access had been prevented or what costs would have been associated with reletting of this sign if it had been accessible. Additionally, Defendant neither cites authority in support of its argument concerning Sign 536, nor explains why none is available. For that reason alone, the issue is abandoned, as indicated earlier.

Finally, Defendant argues that Plaintiff did not make reasonable efforts to relet Sign 773. It offered no evidence, however, about what efforts should have been made, or what their success would have likely been. Defendant had the burden to show what action should have been taken and that it would have been more effective in mitigating the damage. *Jacobs*, 922 S.W.2d at 771. There is also no authority cited by Defendant demonstrating that it is entitled to mitigation under these circumstances, and no explanation is given for the lack of such authority. Defendant's third point is considered abandoned.

Plaintiff's request that Defendant's appeal be dismissed is denied. Plaintiff also filed a motion for attorney fees for

---

**5.** Although Defendant does not provide citations to the record on appeal supporting its contention that the new leases would extend at least through April 30, 1997 (the expiration date called for in the instant contract), our review of the record demonstrates that Plaintiff's representative gave testimony which, if believed, would support that premise.

services performed after the trial of this case, which this court took with the case. Defendant did not respond to that motion. Attorney fees may be awarded on appeal if they are based on a written agreement that is the subject of the issues presented in the appeal. *American Nat'l. Ins. Co. v. Noble Communications, Co., Inc.* 936 S.W.2d 124, 134 (Mo.App. S.D.1996). Here, the contract provided that Defendant agreed to pay the expenses of collection and attorney's fees in the event of default.

Plaintiff's motion for attorney fees included an itemized statement demonstrating 85.75 hours expended since the trial at $90 per hour, for a total of $7,717.50. In reviewing the motion, we have concluded that the amount of $4,000 is a reasonable fee for the post trial matters relating to this appeal. The judgment of the trial court is amended to increase the amount awarded as attorneys' fees by an additional $4,000.

The judgment is affirmed as modified with respect to attorney fees. The case is remanded to the trial court for the entry of a judgment reflecting this modification.