**TDV TRANSPORTATION, INC.,**
**Plaintiff/Respondent,**

v.

**Elmer KEEL and Laura Keel d/b/a**
**Middle American Transports, Inc.,**
**Defendants/Appellants.**

**No. 72158.**

Missouri Court of Appeals,
Eastern District,
Division Five.

March 31, 1998.

---

Dan Dildine, Troy, for defendants/appellants.

Thomas B. Burkemper, Troy, for plaintiff/respondent.

CHARLES B. BLACKMAR, Senior Judge.

A truck owner, plaintiff TDV Transportation, Inc., recovered judgment following a bench trial against a carrier, named in the applicable documents as Middle American Transports, Inc., for rental charges on six trucks. It sought to avoid a liquidated damage provision covering cancellation without ten days notice, claiming anticipatory breach of contract. We conclude that the evidence fails to support the assertion of anticipatory breach. The judgment, therefore, is legally erroneous and is reversed. We of course accept the facts which the trial court might have found in support of its judgment.

On July 15, 1995 the parties executed six "Equipment Lease Contracts," each covering a separate vehicle. Under these agreements the owner provided six trucks with drivers to the carrier for operation on trips as directed by the carrier. The owner undertook to compensate the drivers and to pay operating expenses. The agreements were subject to cancellation by either party on ten days written notice. If the owner terminated the agreements without giving ten days notice the carrier was entitled to retain all monies then due to the owner as liquidated damages for loss of business and difficulty of obtaining replacements.

Compensation for the rental of each vehicle was set out in a document attached to the equipment lease. Although the leases provided that "each Middle American Terminal will have its own addendum" each document attached to the petition contains but one addendum and the several addenda appear to be identical. The documents call for a rate of 80 cents per mile for trips of 301 to 500 miles, with a fee of $30.00 for each stop for loading and unloading. Other rates are specified for trips of differing length but these are not in controversy. Despite the explicit provisions of the leases, however, it appears that a rate of 82 cents was paid for trips of 301 to 500 miles.

Under date of October 6, 1995 the carrier wrote the owner of changes in rates effective October 15, 1995. The letter stated that the 301–500 mile rate had been raised from 80 to 82 cents per mile because of higher fuel prices, which had since declined, and that there would be a return to the 80 cent rate specified in the lease documents. It also stated that the per stop charge was to be reduced from $30.00 to $25.00.

The owner responded to this notice by immediately giving notice of cancellation of the lease contracts and demanding the return of his trucks. The carrier complied, returning five trucks forthwith and the sixth when it returned from a trip. The owner then demanded payment of accrued charges under the lease contracts and sued when payment was not forthcoming.

In their first point the appellants argue that the judgment in favor of the owner for revenue which had accrued at the time of cancellation violated the liquidated damage provisions of the several contracts. The provision for liquidated damages for cancellation on short notice is clear on the face of the contracts. The owner does not challenge this

provision but rather argues that it was justified in terminating the agreement without notice because of the carrier's "anticipatory breach by repudiation."

 Missouri recognizes the doctrine of anticipatory breach. *Powell v. Bagley,* 862 S.W.2d 412, 415 (Mo.App.1993); *Cork Plumbing Co. v. Martin Bloom Associates, Inc.,* 573 S.W.2d 947, 955 (Mo.App.1978). See *Restatement of Contracts 2d.,* Sec. 253, p. 286, which uses the term "repudiation" as synonymous with what most courts have called "anticipatory breach." These authorities teach that when a party, though not in default, manifests a firm intention not to perform the contract, the other party may treat the contract as totally breached, is excused from further performance, and may sue for damages.

*Powell,* however, requires a showing of "a positive intention not to perform." 862 S.W.2d at 414. That case went on to hold that the standard was not met. *Cork Plumbing,* 573 S.W.2d at 955, states the governing rule as follows:

> ... an anticipatory breach may be shown only by the disclosure, by express statements or otherwise, of a positive intention not to perform the contract.

In that case the court found that a party's unequivocal statement of inability to make payments as they came due was sufficient to demonstrate repudiation.

 Tested by the above authorities, the owner's showing of repudiation in this case is legally insufficient to demonstrate anticipatory breach. The owner relies solely on the letter of October 6, 1995. The letter indicates that there is to be a unilateral reduction of certain rates established by the contract, which could not be put into effect without the owner's assent, but does not necessarily indicate that the carrier will not perform the contract if the owner should express disagreement with the decreases. One of the indicated reductions was simply to a per mile rate specified in the text of the contract and apparently increased informally by mutual assent. There would be no default for eight days, at the least, and the owner could terminate the contracts without inci-

dent by giving ten days' notice. The letter does not on its face demonstrate repudiation, and there is no further evidence of repudiation.

The owner, by proceeding as it did, left the carrier without the means of carrying on a portion of its business unless and until replacement trucks could be located. The consequences the parties contemplated came to pass. The claim of anticipatory breach is not supported by evidence that the carrier was entitled to retain accrued rentals as liquidated damages. Inasmuch as the carrier is seeking no additional relief the situation can be corrected by reversing the judgment.

Our conclusion on the carrier's first point relieves us of the necessity for considering the second point, in which it is argued that there is no basis for a judgment against the individual defendants.

The judgment is reversed.

CRAHAN, C.J., and RICHARD B. TEITELMAN, J., concur.