

# In the Missouri Court of Appeals
# Eastern District

## DIVISION THREE

PROFESSIONAL FUNDING COMPANY, )      No. ED110482
)
    Respondent, )
)      Appeal from the Circuit Court
    v. )       of St. Louis County
)      Cause No. 19SL-CC04156-01
JOSEPH F. BUFOGLE, SR., )
)
    and )      Honorable Ellen Hannigan Ribaudo
)
BUFOGLE & ASSOCIATES, P.C., )
)
    Appellants. )      Filed: November 8, 2022

## Introduction

Defendants-Appellants Joseph F. Bufogle, Sr. and Bufogle & Associates, P.C.

(collectively, Bufogle) argue the circuit court erred and misapplied the law in granting Plaintiff-

Respondent Professional Funding Company's (PFC) motion for summary judgment on its breach

of contract claim against Bufogle.[1] In his sole Point Relied On, Bufogle argues PFC is not

entitled to summary judgment because PFC anticipatorily breached the contract by filing suit

---

[1] After the case was submitted, Bufogle filed a motion for leave to amend his Point Relied On from an allegation that the circuit court "erred and erroneously declared and applied the law" to the circuit court "erred and misapplied the law." Bufogle concedes the amendment will not change the "sum and substance" of his Point Relied On. PFC has not responded. We took Bufogle's motion with the case, and we grant the motion. Our granting the motion does not affect the outcome of this appeal.

against Bufogle before Bufogle was required to perform under the contract. We affirm the judgment of the circuit court.

## Factual and Procedural Background

To help finance his law practice, Bufogle borrowed money from PFC. After Bufogle breached the repayment agreement, PFC filed suit against Bufogle in September 2018. The parties reached a settlement agreement on September 24, 2018, and PFC's suit was dismissed pursuant to the agreement.

In the settlement agreement, Bufogle promised to pay PFC $600,000 in satisfaction of alleged damages of $700,000.00. Bufogle agreed to pay $200,000 by September 24, 2019, within one year of the effective date of the agreement. He also agreed to pay an additional $200,000 within two years of the effective date, and a final $200,000 within three years of the effective date. The agreement provided that all payments must be made in at least $25,000 increments.

For its part, PFC promised to voluntarily dismiss the then-pending lawsuit without prejudice and to hold and not file a new suit so long as Bufogle fully complied with the payment terms.

The parties agreed that, should Bufogle fail in any way to fully comply with the payment terms, PFC would file a new lawsuit against Bufogle. Bufogle promised to waive service of process and voluntarily enter his appearance within five days of being advised that the new lawsuit was filed. Bufogle also agreed and consented to PFC's immediately filing a proposed consent judgment attached to, and incorporated in, the settlement agreement. The terms of the consent judgment, signed by both parties, entered judgment in favor of PFC and against Bufogle in the amount of $700,000, less any payments Bufogle made prior to the filing of the consent judgment, with interest.

On September 16, 2019, eight days before Bufogle was due to pay the first $200,000, PFC filed a petition alleging Bufogle's breach of the settlement agreement. With its petition, PFC filed a copy of the settlement agreement. Bufogle was not served with the petition and summons until October 8, 2019. Following service of Bufogle, PFC also filed the proposed consent judgment on October 17, 2019. After PFC filed its petition, the settlement agreement, and the consent judgment, Bufogle made two payments of $4,000 each to PFC.

On October 22, 2019, without notice to either party and before Bufogle filed an answer or entered his appearance, the circuit court entered judgment by executing the consent judgment. Bufogle appealed to this Court. *See Pro. Funding Co. v. Bufogle*, 617 S.W.3d 509 (Mo. App. E.D. 2021). In that first appeal, we held that the circuit court's entry of the consent judgment was void for violating due process and the rules of civil procedure. *Id.* at 512. We therefore reversed the judgment and remanded the case to the circuit court. *Id.* at 511, 514.

Upon remand, Bufogle filed his answer to PFC's petition on April 16, 2021. Bufogle answered, by way of affirmative defense, that PFC "anticipatorily repudiated the parties' agreement when [PFC] sued [Bufogle] before any payments were due under the agreement in issue."[2]

On June 1, 2021, PFC filed a motion for summary judgment and a statement of uncontroverted material facts pursuant to Rule 74.04, arguing that PFC was entitled to judgment as a matter of law on its breach of contract claim.[3]

Bufogle's response generally was that there was no dispute as to most of the facts. In his response to PFC's statement of uncontroverted material facts, Bufogle admitted, among other

---

[2] Defendants carry the burden of proof on all affirmative defenses. *Lehman v. Auto. Invs., L.L.C.*, 608 S.W.3d 733, 738 (Mo. App. E.D. 2020). A pleading that sets forth an affirmative defense shall contain a short and plain statement of the facts showing that the pleader is entitled to the defense. Rule 55.08.
[3] All rule references are to the Missouri Supreme Court Rules (2022) unless otherwise indicated.

3

facts: the parties entered into the settlement agreement on September 24, 2018; pursuant to the agreement, Bufogle was to make certain payments to PFC; Bufogle executed the consent judgment as part of the settlement agreement; Bufogle owed PFC a total of $700,000 but $100,000 would be forgiven if Bufogle fully complied with the settlement agreement; and, after the filing of the consent judgment, Bufogle made two payments of $4,000 each. Bufogle did not file a statement of any additional material facts pursuant to Rule 74.04.[4]

Regarding PFC's statement of material facts that Bufogle breached the settlement agreement and PFC was entitled to summary judgment and damages, Bufogle's response was not to dispute the facts, but to again invoke the affirmative defense of anticipatory breach by repudiation as a matter of law. Bufogle argued that PFC anticipatorily repudiated the settlement agreement by filing suit eight days before the first payment was due from Bufogle. Thus, argued Bufogle, his contractual obligations were terminated and PFC was precluded from enforcing the agreement.

After substantial briefing of PFC's motion for summary judgment, the circuit court heard arguments on August 12, 2021. On October 29, 2021, the circuit court entered its order and judgment rejecting Bufogle's affirmative defense of anticipatory breach by repudiation and granting PFC's motion for summary judgment. The circuit court found there were no material facts in dispute, Bufogle would not have been aware of PFC's lawsuit until he was served on October 8, 2019, after he failed to make the first payment on September 24, 2019, and the settlement agreement was first breached by Bufogle when he failed to make the first payment.

---

[4] Rule 74.04(c)(2) provides, "The response may also set forth additional material facts that remain in dispute, which shall be presented in consecutively numbered paragraphs and supported in the manner described in Rule 74.04(c)(1)." S*ee also Hendrix v. City of St. Louis*, 636 S.W.3d 889, 900 (Mo. App. E.D. 2021) ("When a party makes a *prima facie* showing that no genuine issues of material fact exist, the non-movant must then show—through affidavits, depositions, answers to interrogatories, or admissions on file—that there actually is a genuine issue of material fact.").

Bufogle now appeals the circuit court's judgment.

## Standard of Review

The propriety of summary judgment is an issue of law. *City of Arnold v. Ray Dickhaner, L.L.C.*, 649 S.W.3d 340, 342 (Mo. App. E.D. 2022) (citing *ITT Com. Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993)). This Court reviews the circuit court's grant of summary judgment *de novo*. *Johnson v. Springfield Solar 1, L.L.C.*, 648 S.W.3d 101, 103 (Mo. banc 2022) (citing *Goerlitz v. City of Maryville*, 333 S.W.3d 450, 452 (Mo. banc 2011)). Summary judgment requires the moving party to establish that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Johnson*, 648 S.W.3d at 103; *see also* Rule 74.04(c)(1), (6). Summary judgment is appropriate in a breach of contract action where the language of the contract is so clear and unambiguous that the meaning of the portion in dispute is so apparent that it may be ascertained from the four corners of the document. *Monsanto Co. v. Garst Seed Co.*, 241 S.W.3d 401, 406–07 (Mo. App. E.D. 2007) (quoting *Bd. of Educ. of the City of St. Louis v. State*, 134 S.W.3d 689, 695 (Mo. App. E.D. 2004)).

## <u>Analysis</u>

On appeal, Bufogle does not allege there remains a disputed issue of material fact. Rather, he maintains PFC was not entitled to judgment as a matter of law. He argues the circuit court erred in granting PFC's motion for summary judgment because, when PFC filed its suit for breach of contract, Bufogle had not yet breached the settlement agreement. According to Bufogle, PFC's filing suit before Bufogle's first payment of $200,000 was due manifested PFC's intent to no longer perform under the agreement and was an anticipatory breach. That anticipatory breach, Bufogle's argument goes, precluded PFC from enforcing the agreement against Bufogle. PFC counters that, by filing suit eight days before Bufogle's payment was due, it manifested a strong

5

desire to perform by enforcing Bufogle's obligations under the agreement. We affirm the circuit court's summary judgment in favor of PFC.

A settlement agreement is governed by contract law. *Brewer v. Cosgrove*, 498 S.W.3d 837, 843 (Mo. App. E.D. 2016). A covenant not to sue is nothing but a contract, and should be so construed. *Passer v. U.S. Fid. & Guar. Co.*, 577 S.W.2d 639, 648 (Mo. banc 1979). The elements of a breach of contract claim are: (1) the existence and terms of a contract including certain rights and obligations between the parties; (2) the defendant breached his obligation under the contract; and (3) the plaintiff suffered damages from the breach. *Reddick v. Spring Lake Ests. Homeowner's Ass'n*, 648 S.W.3d 765, 782 (Mo. App. E.D. 2022) (citing *Khalil v. 3HB Corp.*, 621 S.W.3d 1, 8 (Mo. App. E.D. 2021)). A cause of action for breach of contract does not accrue until after the contract is breached. *Back Ventures, L.L.C. Series D v. Safeway, Inc.*, 410 S.W.3d 245, 257 (Mo. App. W.D. 2013) (quoting *Real Est. Invs. Four, Inc. v. Am. Design Group Inc.*, 46 S.W.3d 51, 59 (Mo. App. E.D. 2001)).

The only element of PFC's breach of contract claim disputed by Bufogle is that he breached his obligation to pay PFC under the settlement agreement. Pursuant to his affirmative defense of anticipatory breach by repudiation, Bufogle argues that PFC's filing suit before Bufogle's first payment was due excused Bufogle of his obligation to pay PFC as a matter of law.

*Anticipatory Breach by Repudiation*

Missouri recognizes the doctrine of anticipatory breach. *TDV Transp., Inc. v. Keel*, 966 S.W.2d 347, 349 (Mo. App. E.D. 1998) (citing *Powell v. Bagley*, 862 S.W.2d 412, 415 (Mo. App. E.D. 1993), *Cork Plumbing Co. v. Martin Bloom Assocs., Inc.*, 573 S.W.2d 947, 955 (Mo. App. St. Louis 1978), and Restatement (Second) of Contracts § 253)); *see also* 23 *Williston on Contracts* § 63:28 (4th ed.) ("[A]n anticipatory repudiation is a breach of contract."). Anticipatory breach of contract by repudiation occurs when a party to a contract repudiates that contract by manifesting,

6

by words or conduct, a positive intention not to perform. *JAS Apartments, Inc. v. Naji*, 354 S.W.3d 175, 185 (Mo. banc 2011); *Ewing v. Miller*, 335 S.W.2d 154, 158 (Mo. 1960); *Carmel v. Dieckmann*, 617 S.W.2d 459, 460 (Mo. App. E.D. 1981); *see also Cork Plumbing Co.*, 573 S.W.2d at 956 ("Missouri has long recognized the doctrine of anticipatory breach by repudiation. However, an anticipatory repudiation may be shown only by the disclosure, by express statements or otherwise, of a positive intention not to perform the contract.") (internal quotations omitted).

Bufogle claims that PFC, by filing suit, manifested its intention not to perform under the settlement agreement. But it is uncontested on appeal that Bufogle was not aware of PFC's suit until he was served on October 8, 2019, weeks after he failed to make the first payment on September 24, 2019.

It has long been established that, to repudiate a contract, the repudiating party must manifest to the other party its intent not to perform under the contract. In *Wayland v. W. Life Indem. Co.*, 166 Mo. App. 221, 148 S.W. 626, 629 (1912), the Kansas City Division of this Court long ago stated the rule this way:

> Where one party to a contract *declares to the other party* to it that he will not make the performance on the future day fixed by it therefor, and does not, before the time arrives for an act to be done by the other party, withdraw his declaration, the other party is excused from performance on his part, or offer to perform, and may maintain his action for a breach of the contract when the day has passed. Such is the well-established rule.

*Id.* (citing *Shaw v. Republic Life Ins. Co.*, 69 N.Y. 286, 292 (1877)) (emphasis added).[5]

---

[5] *See also Ala. v. N.C.*, 560 U.S. 330, 350 (2010) (quoting Section 250 of Restatement (Second) of Contracts: "A repudiation is . . . a statement by the obligor to the obligee indicating that the obligor will commit a breach that would of itself give the obligee a claim for damages for total breach . . .."); 17B C.J.S. *Contracts* § 716 ("A 'repudiation' occurs when an obligor under a contract . . . informs an obligee that the obligor will commit a breach that would of itself give the obligee a claim for damages for total breach . . ..").

Over the years, Missouri courts have not often addressed the rule that a repudiating party must manifest its intent to the other party, but that seems to be because the rule goes without saying and is generally accepted, except by Bufogle here. *See, e.g., TDV Transp., Inc.*, 966 S.W.2d at 348 (purported repudiating party gave written notice of proposed mileage rate change to other party to contract); *Powell*, 862 S.W.2d at 413 (purported repudiating party informed other party that title to property would not transfer until receipt of last installment payment); *Carr v. Carr*, 751 S.W.2d 781 (Mo. App. S.D. 1988) (purported repudiating party informed other party she would not sign deed release until receipt of automobile, family dog, and horse); *Carmel*, 617 S.W.2d at 460 (repudiating party informed other party he no longer wanted and could not afford to buy other party's house); *Cork Plumbing Co.*, 573 S.W.2d at 956 ("The statements made by M.B.A. to Cork as to its intention not to honor the payment terms of the contract satisfy this requirement."); *Landau v. St. Louis Pub. Serv. Co.*, 364 Mo. 1134, 1137-39 (1954) (repudiating party informed other party it would not sign release despite agreement to settle personal injury claim).

Because PFC did not manifest to Bufogle any intent not to perform under the settlement agreement before Bufogle himself breached the agreement, PFC's filing its breach of contract lawsuit was not an anticipatory breach by repudiation.

*Acceptance of Repudiation*

Even if PFC had expressed to Bufogle its intention not to perform under the settlement agreement, that would not end our analysis. Another necessary element of anticipatory breach is the non-breaching party's election to accept the other party's refusal to perform. *See Jetz Serv. Co., Inc. v. Botros*, 91 S.W.3d 157, 163 (Mo. App. W.D. 2002); *see also TDV Transp. Inc.*, 966 S.W.2d at 349 ("[W]hen a party, though not in default, manifests a firm intention not to perform the contract, the other party may treat the contract as totally breached, is excused from further performance, and may sue for damages.").

8

In *Jetz Serv. Co.*, this Court explained:

> The party injured by an anticipatory breach has an election to accept or reject the refusal of performance. For the doctrine of breach by anticipatory repudiation to be applied, he or she must treat the repudiation as a breach. That is, he or she must accept and act on it. Moreover, he or she must also act promptly and within a reasonable time. . . . The renunciation of a contract by the promisor before the time stipulated for performance is not effective unless such repudiation is unequivocally or affirmatively accepted by the promisee. If the promisee declines to accept the renunciation and continues to insist on the performance of the promise, as he or she may do, the contract remains in existence for the benefit, and at the risk, of both parties, and is binding on them ….

91 S.W.3d at 163-64 (citing 17B C.J.S. *Contracts* § 538, pp. 202-03 (1999)).

Here, for essentially the same reason that PFC did not repudiate the agreement in the first place, Bufogle did not accept any repudiation. Bufogle does not dispute that he was unaware that PFC had filed suit until after he had failed to make the first payment under the agreement. He therefore could not have promptly or within a reasonable time accepted any repudiation by PFC. Nor was any acceptance by Bufogle unequivocal or affirmative. To the contrary, Bufogle made two partial payments of $4,000 after he was served with PFC's petition, suggesting Bufogle declined to accept PFC's alleged repudiation and the agreement remained in existence.[6]

For these reasons, Bufogle's anticipatory breach by repudiation defense fails and PFC is entitled to judgment as a matter of law.[7] The point is denied.

## Conclusion

---

[6] PFC offers an alternative argument that, even if PFC had repudiated the agreement, the repudiation was retracted by the parties' continued performance. *See Jetz*, 91 S.W.3d at 164. PFC points to Bufogle's partial payments and PFC's acceptance of those payments. Because we hold PFC did not repudiate the agreement and Bufogle did not accept any repudiation by PFC, we need not decide whether the parties retracted PFC's alleged repudiation.

[7] We note a brief reference in Bufogle's sole Point Relied On to *Boten v. Brecklein*, 452 S.W.2d 86, 92 (Mo. 1970), for the proposition that "a party to a contract cannot claim its benefit where he is the first to violate it." The citation seems to be merely additional support for Bufogle's anticipatory breach defense. To the extent Bufogle intends this "first to breach rule" as a separate legal reason for reversal, he did not first have it determined by the circuit court. *See Solomon v. St. Louis Circuit Attorney*, 640 S.W.3d 462, 472 (Mo. App. E.D. 2022) (stating this Court will not consider argument not presented to trial court for its determination). Further, pursuant to Rules 84.04(d)(1) and 84.13(a), we will not consider legal reasons not concisely stated or properly briefed on appeal. "The function of points relied on is to give notice to the opposing party of the precise matters which must be contended with and to inform the court of the issues presented for review." *Lexow v. Boeing Co.*, 643 S.W.3d 501, 505 (Mo. banc 2022) (internal alteration omitted). Bufogle's singular citation to *Boten* accomplishes neither of those functions.

We affirm the circuit court's summary judgment in favor of PFC.

_____
Cristian M. Stevens, J.

Gary M. Gaertner, Jr., P.J., and
John P. Torbitzky, J., concur.